**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re:  **DOROTHY MASLIN NESS,**            **Case No. 24-34680-KLP**
                **Debtor.**                              **Chapter 13**

---

**ZACHARY CHURCH,**

     **Plaintiff,**

**v.**                                                    **Adv. Pro. No. 25-03002-KLP**

**DOROTHY MASLIN NESS,**

     **Defendant.**

---

**<u>MEMORANDUM OPINION</u>**

By this Adversary Proceeding, Zachary Church (the "Plaintiff" or "Church"), by counsel, seeks a determination that a debt owed to him by Dorothy Maslin Ness (the "Defendant" or "Ness") is nondischargeable pursuant to sections 523(a)(2) and 523(a)(4) of Title 11 of the United States Code (the "Bankruptcy Code"). This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 105 and 28 U.S.C. §§ 151, 157(a), and 1334(a). Venue is proper pursuant to 28 U.S.C. § 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

The Court conducted a trial in this Adversary Proceeding on August 5, 2025, at which time the Court heard the testimony of the parties and admitted various documents into evidence. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1]

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

**Statement of the Case**

*State Court Proceedings*

In November 2023, Church filed a complaint (the "State Court Complaint") in the Circuit Court for the City of Newport News, Virginia, (the "City), against Ness and others alleging breach of contract, fraud, and breach of fiduciary duty in connection with a contract to repair and renovate a fire-damaged home owned by Church and located at 939 Jowett Drive, Newport News, VA (the "Property"). The State Court Complaint included the following allegations.

In October 2021, a fire caused significant damage to the Property. The Property was insured through State Farm Insurance ("State Farm"). State Farm referred Church to co-defendant David J. Drumheller ("Drumheller") who, according to State Farm, had experience with negotiating insurance claims and locating a contractor to make repairs. The Plaintiff retained Drumheller to act as his agent to work with State Farm to settle his claim and to work with a general contractor to perform the repairs and restoration. Drumheller, in turn, recommended Ness and her company, Beaverdam Construction & Renovation, LLC ("Beaverdam"), to Church to serve as the general contractor. Church agreed with Drumheller's recommendation, provided that Ness and Beaverdam were properly licensed and insured. Both Drumheller and Ness verbally affirmed that Ness was insured and held a Class A contractor's license, and, on that basis, Church agreed to her retention.

On or about April 13, 2022, Church and Beaverdam entered into a written contract (the "Contract") to make repairs in exchange for a total payment of $177,243.34. Ness signed the Contract on behalf of Beaverdam. After receiving $151,000, Beaverdam failed to complete the project and refused to perform additional repairs. As a result, Church suffered damages. Church

subsequently learned that the Ness had misrepresented her licensure status and did not hold a valid contractor's license.

Relying on the foregoing allegations, Church sought judgment against Ness, Beaverdam, and Drumheller.  Count I of the State Court Complaint alleged breach of contract against Beaverdam.  Count II of the State Court Complaint alleged fraud against Drumheller and Ness. The final count, Count III, asserted breach of fiduciary duty against Drumheller.

On September 5, 2024, the Honorable Tyneka L.D. Flythe, Chief Judge of the Newport News Circuit Court, entered an *Order for Default Judgment and for Damages upon Default Judgment* (the "State Court Order.")  The State Court Order states that on August 21, 2024, defendants Ness and Beaverdam, along with the Plaintiff, appeared by counsel to argue the defendants' motion for leave to file a late responsive pleading and the Plaintiff's motion for default judgment.  Finding that the Plaintiff had properly served Ness and Beaverdam with the State Court Complaint and they had failed to timely file responsive pleadings without good cause, Chief Judge Flythe denied the motion to file late responsive pleadings.  The Judge granted Plaintiff's default judgment motion against Beaverdam on Count I (breach of contract) and against Ness under Count II (fraud) of the State Court Complaint.

Count II of the State Court Complaint, the only count asserted against Ness, alleged damages of $123,031.58 "at a minimum."  In his prayer for relief, the Plaintiff asked the court to award him damages in the amount of $200,000.00 under Count II.  Nowhere in the State Court Complaint did the Plaintiff allege that Ness breached a contract.  Nevertheless, "based on the evidence provided during a damages hearing,"  the court awarded damages against the Defendant and Beaverdam in the total amount of $350,959.44 with interest accruing at 6% per annum "as a

result of Defendants' *breach of contract*." (emphasis added).  The State Court Order fails to describe any damages attributable to fraud.

### *Bankruptcy Proceedings*

On December 11, 2024, Ness filed a voluntary petition in this Court seeking relief under Chapter 13 of the U.S. Bankruptcy Code.  On January 24, 2025, the Plaintiff timely commenced this Adversary Proceeding by filling a complaint (the "Complaint") seeking a determination that the Defendant's indebtedness to him is nondischargeable pursuant to section 1328(a)(2) "as it references" sections 523(a)(2) and (4).  The Complaint alleges that "Defendant's actions constitute nondischargeable fraud or defalcation while acting in a fiduciary capacity: (1) Defendant's debt arose while the Defendant was acting in a fiduciary capacity, holding insurance proceeds from State Farm for the repair and renovation of Plaintiff's property; and (2) Defendant's debt arose from the Defendant's fraud or defalcation, that she misrepresented her licensure status and is unable to account for all the money entrusted to her." [2]

### Findings of Fact

The evidence at trial consisted solely of the testimony of the parties and their exhibits and falls woefully short of substantiating the relevant allegations contained in the State Court

---

[2]    The allegation that Ness "was acting in a fiduciary capacity, holding insurance proceeds from State Farm" and "is unable to account for all the money entrusted to her" appears to originate with this nondischargeability action. The State Court Complaint neither alleges a breach of fiduciary duty claim against Ness nor alleges facts that would support such an assertion.  The State Court Complaint also does not allege that Ness received funds from State Farm in a fiduciary capacity; in fact, it seemingly suggests the contrary by alleging that "Beaverdam was paid $151,000.00 during the Project" pursuant to "a written contracted (sic) dated April 13, 2022, for $177,243.34."  Pl.'s Ex. 17 ¶¶ 36, 41, ECF Nos. 52-17.  No evidence was offered by the Plaintiff at trial to support a finding of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  *See* 11 U.S.C. § 523 (a)(4).  The allegations against Ness in the State Court Complaint appear to stem solely from her alleged misrepresentation of her licensure status.  Moreover, during closing arguments, counsel for the Plaintiff conceded that the Plaintiff submitted no evidence that Ness was acting in a fiduciary capacity.

Complaint.[3]  Having carefully reviewed the record and the evidence submitted in connection with
this Adversary Proceeding, the Court makes the following findings of fact.

In October or November 2021, after the Property that was owned by the Church suffered
extensive damage from a fire, he turned to his sister, Sierra Church ("Sierra"), for advice.  Sierra
was employed by a local State Farm agent and State Farm insured the Property.  Sierra referred
him to Drumheller, her boyfriend, who she described as a consultant experienced in the insurance
claims process.  Church retained Drumheller to act as his agent to negotiate and settle his insurance
claim with State Farm, as well as to secure a contractor to oversee repairs.  There was no written
contract between Drumheller and Church; however, it was agreed that Drumheller was to act as
the middleman between Church and State Farm and between Church and the contractor.
Drumheller's duties also involved dealing with Church's mortgage company when it became
evident that the mortgage company would need to approve disbursements of the insurance
proceeds.  Church testified that, throughout the process, Drumheller was Plaintiff's primary
contact and source of information.  Church left it to Drumheller to locate a suitable contractor, his
only expectation being "that anyone who works on the Property be licensed and insured."

Drumheller was acquainted with Ness and told Church that he had worked with Ness on
other projects.  Ness's husband was a general contractor who had recently passed away.  Ness did
not have a contractor's license herself but knew her husband's business and his contacts and had
been attempting to arrange for completion of his unfinished projects.  At Drumheller's request,
Ness accompanied him, Church, and Sierra at a walkthrough of the Property on December 21,
2021.  During the walkthrough, Church stated that he didn't care who performed the repairs on the

---

[3]    The parties were unable to reach any stipulations of fact in advance of the trial.

Property so long as they were licensed and insured.  Church testified that Ness stated that she "was able to do that."

Ness testified that she did not state or in any way represent, during the walkthrough or at any time, that she held any contractor's license but only that she could arrange for contractors who were licensed to do the work.  Church did not dispute Ness's testimony regarding the representation she made during the walkthrough and, in fact, acknowledged that it was Drumheller who represented to him that Ness and Beaverdam were qualified to serve as a general contractor and oversee the repairs.[4]  Ness also testified that she understood Church would seek a waiver of the City's general contractor requirement for building permits by submitting the permit application as the owner of the Property, and that Church agreed to do so because he was aware that she did not possess a contractor's license.  The Court finds the Defendant's testimony to be credible because in January 2022, Church applied for a building permit from the City to commence the repairs on his Property.  (Pl.'s Ex. 16, ECF No. 52-16.)  On his permit application, Church sought an exemption from the City's requirement that the repairs be done by a licensed contractor on the grounds that he would perform the work to his home.  (*Id.*)

The Court does not find the Plaintiff's testimony that he did not understand the application to be credible.  In text communications with Drumheller in late January 2022, when the two were

---

[4]    Drumheller's compensation was to be paid by Beaverdam, his choice of contractor.  (Pl.'s Ex. 12, ECF No. 52-12 at 24 (Drumheller explaining to Plaintiff that his fee was to be paid by Beaverdam).)  More specifically, Drumheller had a verbal agreement with Ness and Beaverdam in which he was to receive 15% of the contract price (which was based on the amount of the insurance settlement), for a total of $26,586.50.  (*Id.* (Drumheller explaining that his original agreement with Ness was 20%, but for the Plaintiff's job, he agreed to 15%).)  Since the insurance payout equaled the cost of the proposed repairs, (Pl.'s Ex. 1, ECF No. 52-1), the Court was left with no explanation as to how the amount remaining after paying Drumheller's compensation would be sufficient to complete the repairs.  (*Cf.* Pl.'s Ex. 12, ECF No. 52-12 at 26 (screenshot of message from Drumheller to Ness, berating Ness for explaining to Church that Beaverdam ran out of money because she paid Drumheller part of his commission); Pl.'s Ex. 13, ECF No. 52-13 at 4,10 (Drumheller telling Ness and Church that he would need to be paid as part of the next draw).)  It is reasonable to conclude that Drumheller had a financial incentive to retain Ness and Beaverdam rather than a licensed Class A contractor because Ness was agreeable to his compensation arrangement.

expressing frustration with the mortgage company's refusal to authorize the disbursement of insurance proceeds without a lien waiver provided by the general contractor, Drumheller expressed incredulity about why a lien waiver would be required.  (Pl.'s Ex. 12, ECF No. 52-12 at 7 ("To be honest I'm confused why they need this if you're your own contractor for your property.  Why would you put a lien against your own property."))  To get around the lien waiver, Drumheller advised the Plaintiff to

> Tell them that that is your personal residence and you do not require a contractor's license to do your own work.
>
> - You have friends that are contractors and will be helping you to put it back correctly.
>
> - All major components will be inspected by the city before moving forward, just framing, electrical and plumbing.
>
> - [Y]ou have already completed demo and need the money released to buy material to start rebuilding.

(Pl.'s Ex. 12, ECF No. 52-12 at 5.)  Plaintiff responded, "Okay I will." (*Id.*)

After the walkthrough, Drumheller proceeded to retain Beaverdam to obtain estimates from subcontractors, negotiate prices and oversee the repair work on the Property.  Church subsequently received a document labeled as an "Estimate" dated April 13, 2022, from Drumheller in the name of Beaverdam and provided a repair cost of $177,243.34.  (Pl.'s Ex. 1, ECF No. 52-1.)  The State Court Complaint refers to this "April 13 Estimate" as the contract between Church and Beaverdam, (Pl.'s Ex. 17, ECF No. 52-17), and it was this April 13 Estimate that formed the basis of the total approved insurance claim in the amount of $177,243.34, agreed to by Drumheller and State Farm, (Pl.'s Ex. 21, ECF No. 52-17.)  The April 13 Estimate includes the Defendant's signature, but it

does not contain Church's signature. While it is unclear who prepared the April 13 Estimate,[5] it is, at best, a proposal and not a fully executed contract.

The Plaintiff also introduced into evidence an unsigned estimate in the amount of $197,919.58, which estimate is dated May 18, 2025 – after the commencement of this Adversary Proceeding – and is unsigned. (Pl.'s Ex. 2, ECF No. 52-2.) The Court does not afford this estimate any weight given its date. The Court also notes that the text messages between Drumheller and Church indicate that there was a draft contract circulating on February 15, 2022, (Pl.'s Ex. 12, ECF No. 52-12 at 10); however, that version was not admitted into evidence.

Each estimate designates Drumheller as Beaverdam's "Company Rep." Each estimate is bereft of any material terms other than requiring 50% of the total to be paid in advance with the remainder due at completion. No estimate indicates who will perform the work described in the estimate. No estimate includes representations regarding Ness or Beaverdam's qualifications. Indeed, the Plaintiff failed to submit any document that included a representation by the Defendant that either she or Beaverdam was licensed and insured.

At trial, the Plaintiff submitted a series of text messages between himself and Drumheller from early October 2021 through November 2022 (Pl.'s Ex. 12, ECF No. 52-12) and a series of text messages between himself, Drumheller, and Ness from early April 2022 through August 2022 (Pl.'s Ex. 13, ECF No. 52-13). Many of the text communications between the Plaintiff and Drumheller concern the Plaintiff's mortgage company's requests for documents and its delay in authorizing the release of insurance proceeds. Drumheller assisted the Plaintiff by providing

---

[5] Drumheller's role in preparing the estimates is unclear based on the evidence before the Court. (*See, e.g.,* Pl.'s Ex. 12, ECF No. 52-12 at 6, 8 (Drumheller attempting to get estimates from Ness in order to get a signed contract with Church), Pl.'s Ex. 13, ECF No. 52-13 at 7 (Drumheller complaining that the Plaintiff's mortgage company is "not allowed to dictate the draw schedule of *my* contract" (emphasis added)).)

various documents in response to these requests.  At some point in late February or March 2022,

well after Ness had started on the project during the first week of January, Drumheller told Ness

that the Plaintiff's mortgage company was requesting a copy of a Class A contractor's license be

provided to it before it would agree to release additional funds.  Because the parties and Drumheller

knew that Ness did not have a Class A license, she provided a copy of the HVAC subcontractor's

license (Pl.'s Ex. 10) held by ELN Enterprises LLC, Newmiller HVAC, Newmiller Construction

("ELN") to Drumheller who, in turn, sent it to the Plaintiff.  The Plaintiff then submitted the ELN

license to his mortgage company to obtain a release of insurance proceeds.  There was no evidence

that Ness represented that the ELN license was her or Beaverdam's license.[6]  In fact, during a text

exchange between the Plaintiff and Drumheller griping about Ness, Drumheller complained that

he had not received his commission for an insurance claim for "the class a contractor whose license

she [Ness] used for your [Church's] house."  (Pl.'s Ex. 12, ECF No. 52-12 at 28.)

By September 2022, the Plaintiff was informed that the insurance proceeds had been

exhausted despite only approximately one-half of repairs having been completed.  The Plaintiff

testified that he learned on September 22 that the Defendant was not affiliated with ELN, the

company whose name appeared on the contractor's license he had been shown and that neither

Ness nor Beaverdam held a contractor's license.  The Plaintiff failed to produce evidence that

Defendant's lack of a license was the cause of the damages he incurred.

---

[6]    It is implausible that Plaintiff understood the ELN license was held by the Defendant or Beaverdam.  Not only
did the name appearing on the ELN license have no relation to either the Defendant or Beaverdam, when the
Plaintiff received the permit, he sent it to Ness, who told the Plaintiff that she forwarded it to ELN.  (Pl.'s Ex. 13,
ECF No. 52-13 at 2.)  ELN had also provided the Plaintiff with an estimate for replacement of the Plaintiff's
HVAC system.  Pl.'s Ex. 13, ECF No. 52-13 at 8 (Ness informing the Plaintiff that ELN would no longer honor
their prior estimate given the delays).).  It is also implausible that Drumheller, Plaintiff's agent, understood that
the ELN license was held by Defendant given his prior dealings with her.  Pl.'s Ex. 12, ECF No. 52-12 at 27-28.
Instead, at that time, Plaintiff and Drumheller seemed concerned only with providing State Farm whatever was
necessary to persuade it to authorize the release of insurance proceeds.  *See generally id.*

Ness testified that the actual cost of repairs had far exceeded the estimate, due in part to project delay and to the increased cost of building materials. Indeed, in complaining about the mortgage company's delay in disbursing draws, Drumheller advised the Plaintiff to "mention material prices are constantly on the increase these days and we can't order the material because they're holding money." (Pl.'s Ex. 13, ECF No. 52-13 at 4.) During these conversations, Ness repeatedly stated the need to review and revise the initial insurance request, as certain contractors were no longer honoring their estimates. (*Id.*, ECF No. 52-13 at 8.) Drumheller's proposed solution was to provide the Plaintiff's mortgage company with a backdated contract that matched the insurance disbursements to date, and to provide a different invoice to the Plaintiff's insurance company with the project's overages. (*Id.*, ECF No. 52-13 at 11.) The Plaintiff approved of Drumheller's suggested course of action. (*Id.*, ECF No. 52-13 at 12.) The record is unclear as to whether Drumheller took such action. Church testified that he eventually sold the Property.

## Conclusions of Law

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). Those honest but unfortunate debtors are entitled to a discharge for successfully completing their obligations in a bankruptcy case. *See generally* 11 U.S.C. §§ 727, 944, 1141, 1192, 1228, 1328. The discharge eliminates the debtor's personal liability for certain debts that arose pre-petition. *Id.* § 524(a)(2). However, there are certain types of debts that Congress has determined should not be discharged. "Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Grogan*, 498 U.S. at 287. Those types of

nondischargeable debts are set forth in section 523 of the Bankruptcy Code.[7]  *See* 11 U.S.C. § 523; *Nunnery v. Rountree* (*In re Rountree*), 478 F.3d 215, 219 (4th Cir. 2007).

The Plaintiff seeks a ruling that the debt owed to him by Ness is not dischargeable in her Chapter 13 bankruptcy pursuant to sections 523(a)(2) and (4) of the Bankruptcy Code.  In Chapter 13, a debtor who has completed all payments under the confirmed plan is ordinarily entitled to receive a discharge of all debts provided for by the plan.  11 U.S.C. § 1328 (a).  As stated earlier, however, there are exceptions.  Under section 1328(a)(2), debts of the kind specified in section 523(a)(2) and (4), among others, are not discharged in a Chapter 13 bankruptcy.

The relevant portion of section 523(a)(2) provides that an individual debtor is not discharged from any debt "for money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud."  Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  The party challenging the dischargeability of a debt, in this case the Plaintiff, bears the burden of proving the debt nondischargeable by a preponderance of the evidence.  *Kubota Tractor Corp. v. Strack* (*In re Strack*), 524 F.3d 493, 497 (4th Cir. 2008) (citing *Grogan*, 498 U.S. at 286).

## I.    *Collateral Estoppel Does Not Apply to the Instant Case*

The Plaintiff relies heavily upon the State Court Order, contending that it is a final judgment in favor of the Plaintiff against the Defendant that precludes the Defendant from relitigating issues already decided by the Newport News Circuit Court (the "State Court").  The Plaintiff asserts that the State Court has already ruled that the Defendant committed fraud and

---

[7]    In Chapter 13 cases, such as this one, only debts "of the kind specified in . . . paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)" are excepted from discharge.  11 U.S.C. § 1328(a)(2); *see also Solomon v. Cosby* (*In re Solomon*), 67 F.3d 1128, 1131 (4th Cir. 1995) (discussing the "super-discharge" available to Chapter 13 debtors); *Rosenblum v. Hardesty* (*In re Hardesty*), 553 B.R. 86, 91 (Bankr. E.D. Va. 2016).

liquidated the amount of the Plaintiff's claim against the Defendant attributable to such fraud.  The

Plaintiff contends that the doctrine of collateral estoppel prevents the Defendant from relitigating

the necessary elements of section 523(a)(2) and the amount of damages.  Stated differently, the

Plaintiff asserts that the application of collateral estoppel to the State Court Order compels this

Court to rule in his favor, at least with respect to the Defendant's liability under section 523(a)(2)

and the amount of the Plaintiff's damages.

Generally, "[n]ondischargeability [is] a question of federal law independent of the issue of

the validity of the underlying claim.  *Id.* at 289.  "Thus, the bankruptcy court has exclusive

jurisdiction to make the legal conclusion as to whether a debt is dischargeable."  *D'Agostino v.*

*Genovese* (*In re Genovese*), No. 95-1984, 1996 U.S. App. LEXIS 24046, at *3, 1996 WL 516160,

at *1 (4th Cir. Sep. 12, 1996) (per curiam) (citing *Grogan*, 498 U.S. at 289).  While the bankruptcy

court has exclusive jurisdiction to determine whether the legal elements of nondischargeability

exist, the doctrine of collateral estoppel may apply to factual findings.  *See Grogan*, 498 U.S. at

284; *Hagan v. McNallen* (*In re McNallen*), 62 F.3d 619, 624 (4th Cir.1995).  If the requirements

for collateral estoppel are met, any factual findings made by the state court may not be relitigated.

*In re Genovese*, 1996 U.S. App. LEXIS 24046, at *5-6, 1996 WL 516160, at *2 (first citing

*Grogan*, 498 U.S. at 284-85 & n.11; then citing *Combs v. Richardson*, 838 F.2d 112, 114-16 (4th

Cir. 1988); then citing *In re Raynor*, 922 F.2d 1146, 1148-49 (4th Cir. 1991)).

"[A] federal court must give to a state-court judgment the same preclusive effect as would

be given that judgment under the law of the State in which the judgment was rendered."  *Migra v.*

*Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Here, the State Court Order was

issued under Virginia law.  Accordingly, Virginia preclusion law must be applied.  *See id.*; *see*

*also Heckert v. Dotson* (*In re Heckert*), 272 F.3d 253, 257-58 (4th Cir. 2001) (applying this principle in the dischargeability context).

In Virginia, the doctrine of collateral estoppel bars parties from relitigating facts that were actually litigated and essential to a judgment in a prior action. *Bates v. Devers*, 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974). Virginia law requires that each of the following four elements be shown for collateral estoppel to apply:

> (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

*Whitley v. Commonwealth*, 260 Va. 482, 489, 538 S.E.2d 296, 299 (2000) (first citing *Glasco v. Ballard*, 249 Va. 61, 64, 452 S.E.2d 854, 855 (1995); then citing *Bates*, 214 Va. at 671, 202 S.E.2d at 921); *see also Pahlavi v. Ansari* (*In re Ansari*), 113 F.3d 17, 19 (4th Cir. 1997). These elements must be established by a preponderance of the evidence. *Bates*, 214 Va. at 671-72, 202 S.E.2d at 921 (first citing *City of Portsmouth v. City of Chesapeake*, 205 Va. 259, 270, 136 S.E.2d 817, 826 (1964); then citing *Feldman v. Rucker*, 201 Va. 11, 18, 109 S.E.2d 379, 384 (1959)).

The State Court entered judgment in favor of the Plaintiff and against the Defendant on the fraud count. However, the judgment is not entitled to preclusive effect because there is no evidence that the Defendant's liability was "actually litigated."

Although the Supreme Court of Virginia has recognized that a default judgment may still be sufficiently litigated to satisfy the elements of collateral estoppel, *TransDulles Ctr., Inc. v. Sharma*, 252 Va. 20, 24, 472 S.E.2d 274, 276 (1996), the "actually litigated" element instead requires the presentation of "some evidence or testimony . . . to the trial court which was considered by the judge as the foundation for the judge's holding." *In re Prof'l Coatings (N.A.),*

*Inc.*, 210 B.R. 66, 86 (Bankr. E.D. Va. 1997) (citing *TransDulles Ctr., Inc.*, 252 Va. at 24, 472

S.E.2d at 276).  "[T]he party attempting to invoke collateral estoppel has the burden of proving

that the issue was actually litigated."  *Id.* at 88 (citing *In re Grimm*, 168 B.R. 102, 112 (Bankr.

E.D. Va. 1994)).

The Plaintiff has failed to meet his burden of proof by a preponderance of the evidence that

the default judgment awarded against Ness under Count II (fraud) was actually litigated.  Most of

the State Court Order addresses Ness and Beaverdam's motion for leave to file late responsive

pleadings, which it denied after finding that the defendants had been properly served with the State

Court Complaint and had failed to respond timely.  The State Court Order then simple states that

Plaintiff's motion for default judgment against Ness under Count II is granted.  By comparison,

when awarding damages, the State Court Order states that the award is "based on the evidence

provided during a damages hearing."  Because the State Court Order omits any language indicating

that the State Court considered any evidence except on damages, this Court must conclude that the

State Court did not consider evidence or testimony to serve as the foundation for its ruling against

the Defendant on the fraud count.  Therefore, collateral estoppel does not apply to the issue of the

Defendant's liability for fraud and the Court will consider only the evidence offered at trial to

determine Defendant's liability under sections 523(a)(2) and (4).[8]

---

[8]   Despite the State Court Order indicating that it heard evidence of damages, collateral estoppel does not apply to
determine the amount of any debt owed by Ness to the Plaintiff.  The State Court Order repeatedly states that the
damages are calculated based upon the defendants' breach of contract.  There is no mention of fraud.  However,
in light of the Court's ruling in favor of Ness on nondischargeability, that issue need not be decided.

## II.    *Plaintiff Has Failed to Meet His Burden of Proof on Nondischargeability*

A.    Section 523(a)(2)

Section 523(a)(2)(A) bars the discharge of an individual debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).  To prevail under this provision, the plaintiff must prove the following elements by a preponderance of the evidence.

> (1) the debtor made a representation; (2) the debtor knew the representation was false when he made the representation; (3) the debtor made the false representation with the intent to deceive the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained the alleged loss and damages as a proximate result of the debtor making the representation.

*Wingenbach v. Gray* (*In re Gray*), Adv. Pro. No. 22-03120-KLP, 2024 WL 150624, at *5, 2024 Bankr. LEXIS 69, at *14 (Bankr. E.D. Va. Jan. 12, 2024) (quoting *Espy v. Stevens* (*In re Stevens*), 647 B.R. 299, 325 (Bankr. E.D. Va. 2022)).  In contractor cases such as this one, proof of a false representation requires "an intentional misrepresentation as to a material fact or qualification when soliciting or obtaining the work.  Generally, . . . the question pivots on whether during the negotiations the contractor induced the property owner into signing the contract by making material false representations, like . . . overstating his qualifications." *Isaacson v. Isaacson*, 478 B.R. 763, 775 (Bankr. E.D. Va. 2012) (internal citations and quotations omitted).

The Plaintiff alleges that the elements of section 523(a)(2)(A) are met because (1) Ness made a representation that she was a licensed contractor; (2) she knew or should have known that the representation was false when she made it; (3) she made the representation with the intent to deceive; (4) the Plaintiff relied on the representation; and (5) the Plaintiff suffered damages that were a proximate cause of the Defendant's misrepresentation.  (Compl. ¶ 8, ECF No. 1 at 2-3.)

Having considered the evidence and arguments presented at trial, the Court concludes that the Plaintiff has failed to prove any of these elements by a preponderance of the evidence.

First, the Plaintiff failed to establish that Ness represented, either verbally or in writing, that she held a contractor's license.  The Court finds the Defendant's testimony that she did not represent herself as holding a valid contractor's license to be credible and supported by the other evidence presented to the Court.  The Plaintiff signed the building permit application in January 2022 after selecting the Defendant in December 2021. (Pl.'s Ex. 16, ECF No. 52-16.)  The Plaintiff affirmatively certified on that application that he was not using a contractor on the Property.  (*Id.*) It strains credulity that the Plaintiff would have completed the building permit application in this manner if he believed he had hired a licensed contractor.  Indeed, the conversations between the Plaintiff and Drumheller confirm that the Plaintiff was acting as his own contractor.  (Pl.'s Ex. 12, ECF No. 52-12 at 5, 7.)

Second, Plaintiff's testimony that he relied on the ELN license he was provided as proof of the Defendant's licensure when he decided to hire her company is contradicted by his own evidence.  The Plaintiff decided to hire the Defendant based on Drumheller's recommendation at the December 21, 2021, walkthrough.  The Plaintiff and Drumheller then attempted to skirt his mortgage company's required lien waivers on the grounds that the Plaintiff would be acting as his own contractor.  (Pl.'s Ex. 12, ECF No. 52-12 at 7.)  The Plaintiff's mortgage company would not allow the Plaintiff to act as the contractor.  (*Id.*, ECF No. 52-12 at 8).  At that point, in February 2022, Drumheller gave the Plaintiff the ELN license to facilitate the release of insurance funds.  Thus, the Plaintiff has failed to establish that he reasonably relied upon a misrepresentation by Ness.  Instead, at best, he relied on Drumheller's recommendation and his representations regarding Defendant's qualifications.

16

The only evidence presented to the Court is that the Plaintiff stated during the walkthrough on December 21 that he didn't care who performed the work so long as they were licensed and insured and, in response, the Defendant stated that she could accomplish that. Contrary to the Plaintiff's assertions, this is not a representation that the Defendant had a contractor's license; instead, it is a representation that the Defendant could use subcontractors that were licensed and insured. The Plaintiff has failed to prove that this statement was untrue. The Plaintiff did not offer any evidence that anyone who actually performed the repairs was not a licensed contractor. In fact, the Plaintiff's evidence shows that the Defendant engaged at least one licensed subcontractor to work on the Property – ELN. (*See* Pl.'s Ex. 14, ECF No. 52-14 at 4, 8 (mentioning ELN as a subcontractor).)

Because the Plaintiff has failed to establish that the Defendant made a false representation, he is unable to show that she *knowingly* made a false representation or that she made such a representation with the intent to deceive. Therefore, the Plaintiff has not carried his burden of proof on the first, second and third elements.

Furthermore, the Court finds the Plaintiff's testimony regarding his reliance on the ELN contractor license to not be credible. "Justifiable reliance cannot be found if 'the falsity of [a misrepresentation] would be patent to [the creditor] if he had utilized his opportunity to make a cursory examination or investigation.'" *In re Stevens*, 647 B.R. at 328 (alterations in original) (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995)). The Class A contractor's license held by ELN that was provided to Drumheller by the Defendant was not in the Defendant's nor her company's name, nor was it accompanied by a representation by the Defendant that it was her license. Yet, it was accepted without question by the Plaintiff and utilized by him and Drumheller, who likely knew that the Defendant was unlicensed, to obtain a release of insurance proceeds. Even assuming

that Ness had misrepresented her licensure status, the Plaintiff did not justifiably rely on such representation given the obvious name discrepancy on the ELN license.

Since the Plaintiff has failed to establish the first four necessary elements, the Court need not address the fifth—that the Plaintiff suffered damages that were the proximate cause of the Defendant's misrepresentation.  *See In re Gray*, 2024 WL 150624, at *5, 2024 Bankr. LEXIS 69, at *14; *In re Stevens*, 647 B.R. at 325.  Nevertheless, even if the first four elements were to have been established, the Plaintiff failed to prove damages.  The Plaintiff relied exclusively upon the State Court Order to establish his damages.  The State Court Order awarded damages "as a result of Defendants' breach of contract."  (Pl.'s Ex. 22, ECF No. 52-22 at 3.)  The State Court Order failed to provide any indication of damages attributable to the default judgment against Ness on Count II (Fraud).  In the absence of any assessment of damages due to the Defendant's fraud, there is no identification or quantification of damages "that were a proximate cause of Defendant's misrepresentation."  Having failed to introduce any evidence regarding damages at trial, the Court cannot find that the Plaintiff has established the necessary fifth element required to establish that the debt is nondischargeable.[9]

---

[9]     Damages attributable to the breach of a contract for a home renovation are not necessarily equal to the damages resulting from a contractor's misrepresentation of his licensure status.  In *Webb v. Gathof (In re Gathof)*, the plaintiff in state court filed suit against the defendant unlicensed contractor for both breach of contract and fraud. Adv. Pro. No. 09-01407-SSM, 2010 WL 2375881, 2010 Bankr. LEXIS 1813 (Bankr. E.D. Va. June 3, 2010). The jury awarded $22,000 in damages for breach of contract but only $4000 in damages attributable to the defendant having falsely represented that he held a valid Virginia Class A contractor's license.  When the defendant filed bankruptcy, the plaintiffs sought to have the full $22,000 declared nondischargeable due to the defendant's fraud, as the award was part of "a single order."  The Court, after pointing out that "collateral estoppel applies with just as much force to a creditor as the debtor," stated: "collateral estoppel bars a finding by this court that the separate damages they were awarded for breach of contract—which were the same damages alleged in their fraud count—are nondischargeable as arising from fraud."  *Id*. at *3, 2010 Bankr. LEXIS 1813, at *9.

Here, the State Court Order found that Beaverdam – not Ness – was liable for breach of contract.  The damages awarded by the State Court were due to the breach of contract, with no mention of damages attributable to fraud. On its face, the State Court Order is insufficient to collaterally estop the Defendant from contesting that the damages awarded were the proximate result of Defendant's alleged misrepresentation, rather than Beaverdam's breach of contract.  *See id*.

What is clear from the evidence is that Church delegated his authority and placed his trust in his sister's boyfriend, Drumheller, to choose a general contractor.  Whether Drumheller, knowingly or unknowingly, misrepresented the Defendant's qualifications was not fully addressed.[10]  Neither Drumheller nor Sierra was called to testify at trial.  The Plaintiff offered no evidence that Drumheller and Ness colluded or conspired to defraud him or that Ness was the source of misinformation.  What is shown by the evidence is that Drumheller had a financial benefit in choosing the Defendant because she agreed to pay him a significant portion of the bid price.  Given their history, it is implausible that Drumheller was unaware of the Defendant's qualifications or the lack thereof.[11]

In the absence of proving that Ness represented that she held a contractor's license, the Plaintiff suggests that the failure to inform the homeowner that one does not hold a valid contractor's license when agreeing to oversee home repairs constitutes fraud simply by its omission, relying on this Court's decision in *Wingenbach v. Gray* (*In re Gray*), Adv. Pro. No. 22-03120-KLP, 2024 WL 150624, 2024 Bankr. LEXIS 69 (Bankr. E.D. Va. Jan. 12, 2024).  *Gray* does not so hold.  In *Gray*, the debtor affirmatively represented to the plaintiffs overtly and on numerous occasions that he was "licensed and insured" when, in fact, he was neither.  *Id*. at *5, 2024 Bankr. LEXIS 69, at *15-16; *see also In re Stevens*, 647 B.R.at 326 (debtor-defendant had advertised to the public and represented to the plaintiff that he was licensed and insured).  In this case, the evidence is that Ness did not represent to Church that she held a contractor's license.

---

[10]   The State Court Complaint alleges that Drumheller breached his fiduciary duty to Plaintiff by "misrepresenting to [Plaintiff] that [Defendant] was a licensed Class A contractor."  (Pl.'s Ex. 17 ¶ 71, EF No. 52-17 at 11-12.)

[11]   To the extent that Drumheller had knowledge that Ness did not have a contractor's license, such knowledge likely would be imputed to the Plaintiff under general agency principles. *Am. Fid. Fire Ins. Co. v. Coates* (*In re Coates*), Case No. 78-01114-BJS, 1980 WL 357900, at *4-5, 1980 Bankr. LEXIS 4475, at *12-13 (Bankr. E.D. Va. Sep. 15, 1980) (holding principal had imputed knowledge of alleged misrepresentation, defeating nondischargeability count).

This Court's decision in *Piscopo v. Mallon* (*In re Mallon*), Adv. Pro. No. 08-01095-SSM, 2008 WL 4186183, 2008 Bankr. LEXIS 3185 (Bankr. E.D. Va. Sep. 5, 2008), appears to be more aligned with the facts in this case.  In *Mallon*, the plaintiff relied on a state court's granting of summary judgment for breach of contract, negligence, civil conspiracy, breach of fiduciary duty and fraud as the basis for a determination that the entire final judgment should be excepted from discharge under section 523(a)(2)(A), as a debt for money obtained by fraud, and section 523(a)(4) as a debt incurred through fiduciary defalcation.  The Court was unable to conclude that the state court judgment was sufficient to establish fraud under section 523(a)(2)(A) and observed that

> [w]hile the state court judgment establishes a number of facts that might otherwise be disputed in this litigation, the court cannot concur that those facts satisfy all of the elements of the pleaded grounds for nondischargeability.  With respect, first, to the fraud count, the plaintiff must show that money was obtained by means of a false representation by the debtor upon which she justifiably relied and which resulted in damage to her.  The specific misrepresentation pleaded in the complaint is that the debtor falsely stated that he was a licensed Class A contractor.  The judgment of the state court certainly establishes that he was required to be so licensed, and that he was not, but it does not establish that he represented to [the plaintiff] that he was, or that she justifiably relied on the misrepresentation.

*Id.* at *2, 2008 Bankr. LEXIS 3185, at *3-4.  Likewise, in this case, the Plaintiff has failed to establish, either through collateral estoppel or by the preponderance of the evidence at trial, that the Defendant falsely represented that she held herself out as having a contractor's license and that he reasonably relied upon this representation before agreeing to her employment.[12]

---

[12]  *See also Defot-Sido v. Carr*, Case No. 1:23-CV-01476-MSN-LRV, 2024 WL 3823789, at *3, 2024 U.S. Dist. LEXIS 145203, at *8 (E.D. Va. Aug. 14, 2024) (plaintiff failed to prove the defendant misrepresented his licensing status based on the plaintiff's testimony "that while her 'impression' was that [the defendant] was 'a licensed contractor,' she was 'not 100% sure' whether [the defendant] ever stated he was licensed.").

B.      Section 523(a)(4)

Section 523(a)(4) declares nondischargeable any debt incurred by an individual debtor "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  "To prevail under this provision, a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation."  *In re Strack*, 524 F.3d at 497 (citing *Pahlavi v. Ansari* (*In re Ansari*), 113 F.3d 17, 20 (4th Cir. 1997)).

The Plaintiff alleges that the Defendant committed fraud or defalcation while acting in a fiduciary capacity because: (1) the debt arose while the Defendant was acting in a fiduciary capacity, holding insurance proceeds from State Farm for the repair and renovation of Plaintiff's property; and (2) the debt arose from the Defendant's fraud or defalcation, namely that she misrepresented her licensure status and is unable to account for all the money entrusted to her. (Compl. ¶ 10, ECF No. 1 at 3.)  At trial, however, the Plaintiff presented no evidence that the Defendant received funds she was obligated to segregate and hold in trust as a fiduciary or that she misused or misappropriated any of those funds.

In *Caldwell v. Rankin* (*In re Rankin*), Adv. Pro. No. 24-01001-BFK, 2024 WL 4500241, at *5-7, 2024 Bankr. LEXIS 2530, at *12-17 (Bankr. E.D. Va. Oct. 15, 2024), Chief Judge Kenney of this Court considered both federal common law and state law before rejecting the argument that one's status as a contractor under state law is sufficient to establish a fiduciary relationship under section 523(a)(4).  After reviewing applicable law, he concluded that "courts within the Fourth Circuit have rejected allegations of fiduciary status in contractor cases, where there was no requirement that the funds be segregated."  *Id*. at *6, 2024 Bankr. LEXIS 2530, at *16 (first citing *Isaacson*, 478 B.R. 763; then citing *K&M Elec., Servs. v. Vito* (*In re Vito*), 598 B.R. 809 (Bankr.

21

D. Md. 2019) (although Maryland law requires construction funds to be 'held in trust,' such language does not rise to the level of an express or technical trust and does not create a fiduciary relationship for purposes of section 523(a)(4).); and then citing *Arrow Concrete Co. v. Bleam* (*In re Bleam*), 356 B.R. 642 (Bankr. D.S.C. 2006) (no fiduciary relationship under South Carolina law, which does not require the contractor to segregate the funds and does not use the word "trust")).   Thus, simply being employed as a contractor is not enough to create a fiduciary relationship.

Although the Defendant received insurance proceeds to pay subcontractors and other expenses, she was not required under Virginia law or pursuant to any contract to segregate the funds she received.   *See id.* at *7, 2024 Bankr. LEXIS 2530, at *16-17 ("Virginia Code § 43-13 does not use the terms 'trust' or 'fiduciary,' and it does not require the segregation of construction funds.").   The Plaintiff offered nothing to establish that the Defendant was required to segregate funds.   The word "trust" does not appear in the April 13 Estimate that the Plaintiff contends forms the basis of a contractual relationship – nor does it appear in the other estimate offered to the Court. Furthermore, even if such a relationship existed, the Plaintiff has failed to establish that the debt owed to him "arose from the debtor's fraud or defalcation."   *In re Strack*, 524 F.3d at 497.

The Court notes that the State Court Complaint did not assert a breach of fiduciary duty claim against the Defendant, but only against Drumheller.   The State Court Order does not dispose of or even address the breach of fiduciary duty claim asserted against Drumheller.   Counsel for the Plaintiff admitted during closing arguments that the evidence presented at trial was likely insufficient to establish that the Defendant was acting as a fiduciary.   Accordingly, the Court concludes that the Plaintiff has failed to carry his burden of proof establishing either of the two

elements required under *Strack* to have a debt declared nondischargeable for fraud or defalcation while acting in a fiduciary capacity.

### III.    Pretrial Motions

A.    Discovery Disputes

Leading up to the trial of this matter, the Defendant filed several pretrial motions alleging that the Plaintiff failed to adequately and timely respond to the Defendant's discovery requests. On June 23, 2025, the Defendant filed a motion [ECF No. 42] (the "Motion to Compel"), seeking an order compelling the Plaintiff to serve full and complete responses to the Defendant's first set of requests for production of documents.  The Motion to Compel sought an award of expenses and attorney fees incurred in bringing the motion.  The Defendant did not provide a notice of the motion, nor did the Defendant schedule a hearing on the motion.  The Plaintiff did not file a responsive pleading.  No order has been entered in connection with the Motion to Compel.

On July 14, 2025, Ness filed the *Defendant's Motion to Extend Discovery Deadline* [ECF No. 45] (the "Motion to Extend Time") and the *Defendant's Motion to Continue Trial Date* [ECF No. 46] (the "Motion to Continue").  The Defendant stated that these motions were necessitated primarily by Plaintiff's counsel's failure to appear for a duly scheduled deposition of the Plaintiff on July 2, 2025, at 3 p.m.  Both parties and counsel for the Defendant appeared as scheduled. Counsel for the Plaintiff failed to appear at the deposition and did not respond to attempts to contact him until approximately 5:20 p.m., more than two hours after the scheduled deposition.  The Defendant asserted that extensions of the discovery cutoff and trial date were required to accommodate a rescheduled date for the Plaintiff's deposition.  The Defendant requested reimbursement of court reporter fees in the amount of $243.80 along with attorney fees in the amount of $750 and the Defendant's lost wages of $273.

By his *Response to Motion to Continue Trial Date and Motion for Extensions* [ECF No. 47] (the "Response"), counsel for the Plaintiff explained that he had returned to town from a family vacation in the early morning hours of July 2, 2025, following a delayed flight, only to discover that his family dog had unexpectedly passed away.  He further stated that the confusion and distress related to his family pet's passing caused him to forget the scheduled deposition.  He apologized and offered to pay the court reporter fee but opposed an award of any additional amounts.  In consideration of these pleadings, the Court extended the deadline to conduct discovery through July 22, 2025, but declined to continue the trial date.  (Order, ECF No. 48.)  The Court deferred consideration of any award of fees and costs pending the conclusion of the trial.  (*Id.*)

Having concluded the trial, the Court turns to Rule 37 of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding pursuant to Rule 7037 of the Federal Rules of Bankruptcy Procedure.  Rule 37(a)(1) provides that a discovery motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  This Court will not consider any motion concerning discovery that does not contain this certification. *See* Local Bankruptcy Rule 7026-1(H).  A movant is entitled to fees and expenses on a properly presented discovery motion only if the motion is granted or the requested discovery is provided after the motion was filed.  Fed. R. Civ. P. 37(a)(5)(A).  Even in such instances, the Court must not order payment if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  *Id.*

The Motion to Compel was accompanied by the required certification. Fed. R. Civ. P. 37(a)(1); Local Bankruptcy Rule 7026-1(H). However, the Motion to Compel was never scheduled for hearing as required by Local Bankruptcy Rule 9013-1(H)(2)(c). No order was entered granting the Motion nor was there a showing that the requested discovery was provided to the Defendant after filing the Motion. Moreover, because the Defendant did not seek a hearing on the Motion, the Court is unable to determine whether an award of expenses would be prohibited under Rule 37(a)(5)(ii) or (iii). Therefore, the Court will deny the Defendant's request for expenses and fees incurred in bringing the Motion to Compel.

By its Order, the Court granted the Motion to Extend Time and set forth grounds that would ordinarily justify an award of fees and expenses, particularly the court reporter's appearance fee. *See* Fed. R. Civ. P. 37(a)(5)(A). However, neither the Motion to Extend Time nor the Motion to Continue were accompanied by the certification required by Rule 37(a)(1). In his Response, the Plaintiff did not oppose an extension of the discovery cutoff or a continuance of the trial date. Plaintiff's counsel also offered to pay the court reporter's appearance fee. Without the certification required by Rule 37(a)(1), the Court may reasonably conclude that had a good faith attempt been made to address Plaintiff's counsel's failure to appear at the originally scheduled deposition, the matter could have been resolved without court action or through a joint motion. In any event, the Defendant's failure to comply with the Rule 37(a)(1) certification requirement necessitates a denial of her request for an award of fees and expenses. *See* Local Bankruptcy Rule 7026-1(H).

B.    Motion in Limine

On July 21, 2025, Ness filed the *Defendant's Motion in Limine to Exclude Evidence or Testimony Regarding Plaintiff's Claimed Damages* [ECF No. 54] (the "Motion in Limine"), seeking to prohibit the Plaintiff from offering testimony, evidence or argument regarding

Plaintiff's claimed damages.   The requested relief was based on Plaintiff's counsel having instructed the Plaintiff during his deposition not to answer questions identifying and explaining the basis for his claimed damages.   According to the Defendant, the Plaintiff refused to share his state court counsel's calculation of damages, asserting attorney-work product and lack of relevance as the basis for his objection and refusal to answer damages-related questions.

On July 22, 2025, the Plaintiff filed his *Objection to the Motion in Limine* [ECF No. 57] wherein he asserted that the State Court Order included a final and binding determination of the Plaintiff's damages, adding that the amount awarded by the State Court had been asserted in the Plaintiff's proof of claim without objection; thus, evidence concerning damages was irrelevant. The Plaintiff further maintained that because the calculation of Plaintiff's damages had been made by the attorney representing Plaintiff in state court, those calculations were protected by attorney work product pursuant to Federal Rule of Evidence 502(g)(2).

Prior to commencing the trial on August 5, 2022, in response to the Plaintiff's representation that his evidence related to damages would be limited in light of his contention that the amount of the Plaintiff's damages had been established pursuant to the State Court Order and that the Defendant was collaterally estopped from contesting it, the Court deferred its ruling on the Motion in Limine until such time as the Plaintiff attempted to introduce any such evidence during the course of the trial.   The Plaintiff offered no meaningful testimony or evidence of any damages resulting from the Defendant's alleged fraud and the Court was not required to make a ruling. While the Court would likely find merit in the Motion in Limine, the Plaintiff's decision to refrain from offering the evidence sought to be excluded along with the Court's decision to find in favor of the Defendant renders the Motion in Limine moot.

## Conclusion

Based on the evidence admitted at the trial, including the testimony of witnesses, and the arguments of counsel, the Court concludes that the Plaintiff has failed to meet his burden of proof under either section 523(a)(2) or (4). Therefore, the debt owed by Defendant to Plaintiff is dischargeable.

The Defendant's requests for awards of fees and expenses in connection with the pretrial motions are denied.

The Motion in Limine is denied as moot.

A separate Order shall be issued.


Dated:    November 6, 2025            /s/ Keith L. Phillips
                                    UNITED STATES BANKRUPTCY JUDGE

                                    Entered on Docket: Nov 6 2025


**Copies to:**

**Zachary Church**
7688 Flowering Magnolia Ln.
Quinton, VA 23141

**James H. Wilson, Jr.**
4860 Cox Road, Suite 200
Glen Allen, VA 23060

**Dorothy Maslin Ness**
361 Wake Road
Wake, VA 23176

**Anthony L. White**
Anthony L. White, PLLC
PO Box 4665
Glen Allen, VA 23060